**FILED**

IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ OCT 13 2005 ★

P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
::

LARRY ALLEN,                                          :        05 CV 1580 (ARR)
                                                      :
                        Petitioner,                   :        <u>NOT FOR</u>
                                                      :        <u>PUBLICATION</u>
        -against-                                     :
                                                      :        <u>OPINION</u>
DENNIS BRESLIN,                                       :        <u>AND ORDER</u>
                                                      :
                        Respondent.                   :
                                                      :
------------------------------------------------------------------ X

ROSS, United States District Judge:

Petitioner <u>pro se</u>, Larry Allen ("Mr. Allen" or "petitioner"), filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 18, 2005, claiming that (1) the evidence was insufficient to support his conviction for first-degree burglary and the convictions went against the weight of the evidence; (2) he was denied his due process right to a fair trial because of the trial court's <u>Molineux</u> ruling; (3) he was denied his right to an effective summation; and (4) he was denied his right to effective assistance of trial counsel. For the reasons stated below, the court denies the instant petition for a writ of habeas corpus.

## BACKGROUND

Following a jury trial, petitioner was convicted on May 29, 2001 of one count of first-degree burglary, two counts of second degree criminal possession of a weapon, seven counts of fourth degree criminal possession of a weapon, and one count of resisting arrest. Petitioner was sentenced to concurrent terms of ten years on the burglary count, seven years on each of the second-degree possession counts, one year on each of the fourth-degree possession counts, and

one year on the resisting arrest count. Specifically, petitioner was convicted of breaking into the home of Velesia Dawkins, the sister of petitioner's wife Jacqueline[1]—armed with two handguns, three kung fu stars, a garrotte, nun-chucks, a crossbow, and a sword—and resisting arrest when police subsequently reported to the scene. At trial, petitioner presented evidence suggesting that he had never entered Velesia Dawkins' apartment and that he did not brandish a gun during the incident.

Petitioner appealed to the Appellate Division, which affirmed the conviction by order dated June 30, 2003. People v. Allen, 761 N.Y.S.2d 856 (2d Dep't 2003). The Appellate Division explicitly stated that petitioner had not preserved for appellate review his "contention that the evidence was legally insufficient to establish his guilt of the crimes of burglary in the first degree or criminal possession of a weapon in the second degree." Id. at 857. The court went on to state that "[i]n any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish [petitioner's] guilt of burglary in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the fourth degree beyond a reasonable doubt." Id. In addition, the court held that "the verdict of guilt was not against the weight of the evidence." Id. The court summarily dismissed petitioner's remaining claims as being either unpreserved or without merit. Id. Thereafter, petitioner sought leave to appeal to the Court of Appeals, which was denied by order dated October 8, 2003. People v. Allen, 100 N.Y.2d 640 (2003).

Petitioner filed a Section 440 motion on November 3, 2004. Petitioner argued that counsel had been ineffective for refusing to allow petitioner to testify on his own behalf and for

---

[1] Jacqueline Dawkins is apparently one of petitioner's multiple wives.

failing to investigate or interview petitioner's wives and daughter, who were present during the incident, to secure their testimony as defense witnesses at trial. By order dated January 5, 2005, the court denied his motion, finding that trial counsel did investigate and interview petitioner's wives and daughter and made a strategic decision, with his client's agreement, not to rely on their testimony. The court concluded that petitioner's motion merely "demonstrate[d] his dissatisfaction with decisions he made with respect to his case" and, thus, was inadequate to vacate the judgment. Respondent's Ex. J at 2.

## DISCUSSION

I.  AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"[C]learly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a

3

set of facts that are materially indistinguishable from a decision of th[e] Supreme Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court...should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required...the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Frances S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

This deferential review of state court judgments is available only when the federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). If there is no such adjudication, the deferential standard does not apply, and "we apply the pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)); see also DeBerry v. Portuondo, 403 F.3d 57, 66-67 (2d. Cir. 2005); Miranda v. Bennett, 322 F.3d 171, 178 (2d Cir. 2003). For the purposes of AEDPA, a state court "adjudicates" a petitioner's federal constitutional claims "on the merits" whenever "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). When a state court does so, a federal habeas court must defer in the manner prescribed by AEDPA to the state court's decision on the federal claim, even if the state court

4

does not explicitly refer to either the federal claim or relevant federal case law. Id. To determine whether a state court has disposed of a claim on the merits, the court considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Id. at 314 (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999)).

II.    Statute of Limitations

A state prisoner generally has one year from the date his conviction becomes final to file a petition for habeas corpus in federal court. 28 U.S.C. § 2244(d)(1). The statute begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A). For a New York prisoner who does not file a petition for a writ of certiorari to the United States Supreme Court, conviction is final 90 days after leave to appeal to the New York Court of Appeals is denied. See McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003).

Petitioner's leave to appeal to the Court of Appeals was denied on October 8, 2003. Respondent's Ex. G. Therefore, his conviction became final on January 6, 2004, ninety days after the Court of Appeals denied his leave to appeal on direct review. He filed his petition for habeas corpus in federal court on March 18, 2005. Although he filed his petition more than a year after his conviction became final, the one-year statute of limitations period was tolled between November 15, 2004 and May 16, 2005, while his 440 motion was pending. See 28 U.S.C. § 2244(d)(2) (stating that "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending

shall not be counted"). Given that Allen filed his petition in federal court while his 440 motion was pending, the limitations period has not run and, thus, his petition is timely.

III.    Exhaustion of State Remedies

In general, petitioner must exhaust available state remedies before seeking federal habeas relief. See id. § 2254(b)(1) (A); see also Picard v. Connor, 404 U.S. 270, 275-76 (1971); Daye v. Attorney General, 696 F.2d 186, 190 (2d Cir. 1982) (en banc). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." Daye, 696 F.2d at 191. Pursuant to AEDPA, a district court may now, in its discretion, deny on the merits habeas petitions containing unexhausted claims–so-called "mixed petitions." See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."); see also Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002) (recognizing that the district court may deny on the merits unexhausted habeas claims). Although the Second Circuit has yet to enunciate a standard for determining when, in cases of "mixed petitions," unexhausted claims should be dismissed on the merits, the majority of district courts within this circuit have adopted a "patently frivolous" test for dismissing unexhausted claims. Wilson v. Goord, No. 00 Civ. 4849, 2004 WL 226149, *3 (S.D.N.Y. Feb. 6, 2004).

Exhaustion of a federal constitutional claim in state court does not invariably require citation of "book and verse on the federal constitution." Picard, 404 U.S. at 278 (internal

6

quotation marks omitted). A claim may be presented for habeas review even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his claim before the state court, relied on pertinent federal cases employing constitutional analysis, relied on state cases employing constitutional analysis in like fact situations, asserted his claims in terms so particular as to call to mind specific rights protected by the constitution, or alleged a pattern of facts well within mainstream of constitutional litigation. See Daye, 696 F.2d 186.

In this case, petitioner fairly presented his federal constitutional claims to state courts. As indicated in his brief to the Appellate Division and his 404 motion, petitioner presented to the state courts key facts and legal claims alleging violations of his constitutional rights to due process and effective assistance of counsel. See Respondent's Exs. A & H. He cited pertinent federal and state cases containing relevant constitutional analysis and presented his claim in specific enough terms to "call to mind" the particular constitutional right on which he bases his federal application. Thus, petitioner has satisfied the exhaustion requirement, and his petition for habeas relief is properly before this court.

IV.    Petitioner's Claims

    A. *Sufficiency of Evidence*

Petitioner claims that the evidence was legally insufficient to support the guilty verdict for first-degree burglary, thus violating his due process rights under the Fourteenth Amendment. The court may not review petitioner's claim because it is procedurally defaulted, and petitioner has failed to demonstrate either cause for the default and prejudice resulting therefrom or that a fundamental miscarriage of justice would result from the court's refusal to hear the claims.

Federal courts may not review state court decisions that rest on an adequate and

independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice. Fama v. Commissioner of Correctional Services, 235 F.3d 804, 809 (2d Cir. 2000) (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); Harris v. Reed, 489 U.S. 255, 262 (1989)). In order for federal review to be procedurally barred, the state court's reliance on state law must be "clear from the face of the opinion." Id. (internal quotation marks and citation omitted). The Second Circuit held in Fama that where the state court uses language such as "the defendant's remaining contentions are either unpreserved for appellate review or without merit" the claim is subject to federal review. Id. at 810-11. The court's decision in Fama did not overturn prior rulings, however, that a state court decision constitutes a procedural default where the court stated that a claim was "not preserved for appellate review" before ruling "in any event" on the merits. Id. at 810 n.4.

Where a state court rules against a petitioner on procedural grounds, the petitioner faces a "procedural default" precluding federal habeas review. A procedural default may be excused by a federal court, however, if the petitioner demonstrates either cause for the default and actual prejudice from the alleged violation of federal law, or that the failure to consider the claims will "result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. A miscarriage of justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). A petitioner establishes actual innocence by demonstrating that "in light of all the evidence, it is more likely than not that no reasonable

8

juror would have convicted him." Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (internal quotation marks and citations omitted).

Petitioner presented these claims to the Appellate Division, which ruled that petitioner had not preserved for appellate review his "contention that the evidence was legally insufficient to establish his guilt of the crimes of burglary in the first degree." 761 N.Y.S.2d at 857. More specifically, the court held that petitioner failed to preserve this issue for review because he merely submitted a general motion to dismiss at trial, rather than a more specific objection to the sufficiency of evidence for the burglary claim. See id. (citing N.Y. Crim. Proc. Law § 470.05 (2)). The court went on to state that "[i]n any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish [petitioner's] guilt of burglary in the first degree." Id. Under Fama, the state court's ruling constitutes a clear and unambiguous reliance on the procedural violation as a basis for its decision. See 235 F.3d at 810 n.4.

However, the procedural bar doctrine only precludes habeas review when the state procedural ground is firmly established and regularly followed by the state courts. See James v. Kentucky, 466 U.S. 341, 348-49 (1984). As the Second Circuit has recognized, New York's contemporaneous objection rule is firmly established and regularly followed by state courts. See Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999). New York's contemporaneous objection rule requires both that an objection be lodged at the time of the ruling or "at any subsequent time when the court had an opportunity of effectively changing the same .... [and] is sufficient if the party made his position with respect to the ruling or instruction known to the court." N.Y.Crim. Proc. Law § 470.05(2). Under state law, timeliness as well as specificity are required for the

9

preservation of claims of error. See People v. Gray, 86 N.Y.2d 10 (1995) (holding that even where a motion to dismiss for insufficient evidence is made, the preservation rule requires that the objection be directed specifically at the alleged error); People v. Bynum, 70 N.Y.2d 858 (1987) (finding general motion to dismiss at close of evidence insufficient to preserve claim regarding establishment of particular element of crime). In its decision, the Appellate Division, in reliance on New York Criminal Procedure Law § 470.05(2), held that defendant had similarly failed to preserve his legal sufficiency claim for appellate review. Petitioner is thus procedurally defaulted from seeking federal habeas review on these claims unless he demonstrates either cause for the default and prejudice resulting therefrom or that a fundamental miscarriage of justice would result from the court's refusal to hear the claim. See Coleman, 501 U.S. at 750.

Petitioner has neither attempted to demonstrated cause for the default nor alleged that he is "actually innocent." A petitioner establishes cause for a default when he shows that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488. Here, petitioner has made no such showing.[2] Moreover, petitioner has not established prejudice, which is also required to excuse procedural default. "To satisfy the prejudice prong, petitioner must show not merely a possibility of prejudice, but that the alleged error worked to his actual and substantial disadvantage." Capiello v. Hoke, 698 F. Supp. 1042, 1052 (E.D.N.Y. 1988) (internal quotation marks and citation omitted). Here, petitioner is unable to show even a possibility of prejudice in light of Appellate

---

[2] A claim of ineffective assistance of counsel may establish cause for a procedural default. See McKlesky v. Zant, 499 U.S. 467, 494 (1991). However, petitioner has never claimed that trial counsel was ineffective for failing to comply with New York's contemporaneous objection rule. Thus, any such claim is not exhausted and may not be considered as cause for the procedural default. See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

Division's statement that, "[i]n any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish [petitioner's] guilt of burglary in the first degree ... beyond a reasonable doubt." 761 N.Y.S.2d at 857.

Second, petitioner has not argued that failure to hear his claim will result in a fundamental miscarriage of justice. Coleman, 502 U.S. at 752. The Supreme Court has stated that a miscarriage of justice occurs in an "extraordinary" case as where a constitutional violation has "probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 322-24 (1995). Petitioner has not presented any new evidence and, " '[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (citing Schlup, 513 U.S. at 324)). Nor has the petitioner demonstrated a miscarriage of justice by pointing to errors that call into question the validity of the trial itself, such as violation of the right against double jeopardy. See Washington v. James, 996 F.2d 1442, 1450 (2d Cir.1993).

Since petitioner cannot show cause for the procedural default and resulting prejudice, nor can he show that a miscarriage of justice would result from the failure to consider the defaulted issue, the claim is procedurally barred and cannot be reviewed. Accordingly, Mr. Allen's claim that there was insufficient evidence at trial to support his burglary conviction shall be dismissed without reaching the merits. See Grey v. Hoke, 933 F.2d 117, 121 (2d Cir.1991).[3]

---

[3] To the extent that petitioner has also argued that the verdict is against the weight of the evidence, such a claim is not a federal claim as required by 28 U.S.C. § 2254(a). A "weight of the evidence" claim is based purely on state law. Douglas v. Portuondo, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002). Thus, petitioner raises an error of state law, for which habeas review is not available. See Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law." (internal quotations omitted)).

B. *Denial of Right to Fair Trial Because of Trial Court's* Molineux *Ruling*

Petitioner also claims that he was denied his due process right to a fair trial because the trial court improperly permitted the prosecution to present evidence of an uncharged crime. At petitioner's trial, the prosecution—as proof of petitioner's intent and motive—introduced evidence showing that petitioner threw a Molotov cocktail at his sister-in-law's apartment building earlier on the day of the crime. Respondent's Ex. A at 42. The court admitted the evidence pursuant to People v. Molineux, 168 N.Y. 264 (1901), which held that evidence of uncharged crimes is inadmissible against a defendant in a criminal trial unless "it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial." 168 N.Y. at 293. In his direct appeal, petitioner argued that the trial court's evidentiary ruling was improper because (1) the state lacked clear and convincing evidence that the petitioner was involved in the fire-bombing; (2) the evidence of the uncharged crime did not establish petitioner's intent or motive; and (3) the prejudicial nature of the evidence outweighed its probative value. Respondent's Ex. A at 42-53. The claim was dismissed as without merit by the Appellate Division.[4] Allen, 761 N.Y.S.2d at 857.

Because this constitutes an "adjudication on the merits," the court can grant habeas relief

---

[4] The Appellate Division summarily dismissed all of petitioner's claims, except the sufficiency of evidence claims, as without merit or unpreserved for appellate review, but failed to specify why the Molineux claim was dismissed. Allen, 761 N.Y.S.2d at 857. On direct appeal, the state never argued that petitioner's Molineux claim was unpreserved and there is nothing in the record that would suggest it was unpreserved. Thus, the court is satisfied that the Appellate Division dismissed the Molineux claim on the merits. See Ryan v. Miller, 303 F.3d 231, 246 (2d Cir. 2002).

under 28 U.S.C. § 2254(d) only if the state court's determination is either "contrary to" or "an unreasonable application of" Supreme Court precedent. Petitioner's claim rests on a state court's evidentiary ruling based on state law. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 68. Thus, a habeas petitioner must demonstrate that the allegedly-erroneous state court evidentiary ruling violated an identifiable constitutional right. See, e.g., Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988). Even if the petitioner can establish that the evidentiary ruling is an erroneous application of state law, habeas relief is warranted "only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial.'" Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) (quoting Rosario, 839 F.2d at 925).

In this case, the Appellate Division's determination that the Molotov cocktail evidence was probative of petitioner's intent and motive and therefore admissible was a straightforward and correct application of state evidentiary law. See People v. Alvino, 525 N.Y.S.2d 7 (1987); People v. Shorey, 568 N.Y.S.2d 436 (2d Dep't 1996); People v. Sanchez, 625 N.Y.S.2d 47 (2d Dep't 1995). Where a state court ruling was not erroneous under state law, a petitioner cannot establish a federal constitutional violation unless he challenges the constitutionality of the state law itself. See, e.g., Hernandez v. Filion, 2004 WL 286107, at *10 (S.D.N.Y. Feb. 13, 2004) ("[T]he proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional." (citations omitted)) (Report and Recommendation adopted by 2004 WL 555722 (S.D.N.Y. Mar. 19, 2004)); Davis v. Senkowski, 1998 WL 812653, at *7 (E.D.N.Y. Aug. 6, 1998) (concluding that admission of evidence of defendant's prior bad acts to prove identity was appropriate under state law and thus, admission did not violate the Constitution). Petitioner

13

articulates no challenge to the constitutionality of the underlying state evidentiary rule and thus has not established any error of constitutional magnitude.

Moreover, even assuming the trial court and Appellate Division's evidentiary rulings were erroneous, petitioner has not established that the evidentiary ruling deprived him of a fundamentally fair trial. As petitioner acknowledged in his appellate brief, absent the evidence of the Molotov cocktail, there was "ample testimony as to appellant's rationale for committing the alleged acts[] and his state of mind." Respondent's Ex. A at 42. Moreover, the trial court provided limiting instructions to the jury on four occasions—three times during the presentation of evidence and once during the trial judge's final charge. See Trial Transcript 272, 352-53, 362, 945. At each point, the trial judge instructed the jury that petitioner was not charged with any crime related to the Molotov cocktail incident and that they should consider the evidence only if they find it probative to the issues of intent or motive. See, e.g., Trial Transcript 945. Absent evidence to the contrary, courts "must presume that juries understand and abide by ... limiting instructions." U.S. v. Downing, 297 F.3d 52, 59 (2d Cir. 2002). Thus, taking the record as a whole, the trial court's limiting instructions cured any prejudicial effect the evidence may have had. Given that there was ample evidence to support petitioner's conviction absent the evidence of the uncharged crime and the trial court guarded against any prejudicial effect with multiple limiting instructions, the court finds that petitioner has not established that the evidentiary ruling denied his right to fundamentally fair trial.

In sum, the decision of the Appellate Division was not "contrary to" or "an unreasonable application of" any federal law and habeas relief should be denied on this claim.

C. *Denial of Right to Effective Summation*

14

Petitioner also argues that he was denied his right to an effective summation and a fair trial. On direct appeal, petitioner claimed that the trial court ruled that the prosecution was required to show "an underlying specific intent to menace" to satisfy the intent elements of the burglary and weapons possession charges. Respondent's Ex. A at 53. Petitioner contended that defense counsel relied on the court's ruling in his summation, but the court allowed the prosecution to make arguments regarding the intent requirement that were inconsistent with its ruling. Id. at 53-54. Petitioner further argued that the court's jury instructions on the intent requirement for the burglary and possession charges were inconsistent with his previous ruling. Id. The Appellate Division summarily dismissed petitioner's claim, holding that "defendant's remaining contentions either are unpreserved for appellate review or without merit." N.Y.S.2d at 857. A review of the appellate decision and the record suggests that the Appellate Division did not adjudicate petitioner's effective summation claim on the merits.[5] Thus, AEDPA deference is not required and petitioner's effective summation claim will be reviewed de novo. See DeBerry, 403 F.3d at 66-67. When such review is conducted, it becomes apparent that the claim lacks merit.

The right to present closing arguments is inherent in the constitutional guarantee of a fair trial. In Herring v. New York, 422 U.S. 853 (1975), the Supreme Court recognized the

---

[5] The government does not argue that petitioner's effective summation claim is procedurally barred from federal habeas review. On direct appeal, however, the government argued that petitioner's effective summation claim was unpreserved for appellate review. See Respondent's Ex. B at 60. The trial record suggests that, although defense counsel objected during the prosecution's summation, he did not object to the court's jury charge on the specificity of the intent requirement. See Trial Transcript 901, 927, 968-73. Thus, under New York's contemporaneous objection rule, N.Y. Crim. Proc. § 470.05(2), the Appellate Division may have dismissed petitioner's claim as unpreserved for appellate review. Thus, the court cannot conclude that the state court adjudicated the claim on the merits.

fundamental importance of summations in criminal trials, particularly for the defendant, for whom "closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt." Id. at 862. The Herring Court held that a New York statute limiting counsel's opportunity to make a summation of the evidence denied defendant his Sixth Amendment right to effective assistance of counsel. Similarly, New York courts have held that even when defense counsel is afforded an opportunity to sum up, the trial court's change of its intended jury charge after counsel's summation may deny defendant the effective assistance of counsel. See, e.g., Etienne v. New York, 631 N.Y.S.2d 898 (2d Dep't 1995); People v. Layer, 604 N.Y.S.2d 347 (3d Dep't 1993); People v. Richards, 413 N.Y.S.2d 698 (1st Dep't 1979).

Petitioner argues that the trial judge's pre-summation ruling on the issue of intent and subsequent jury charge misled defense counsel in the preparation of his closing argument and, thus, deprived petitioner of his right to effective assistance of counsel. A review of the record shows that the court's intent ruling was not a decision regarding the jury charges. In fact, the ruling made no mention of jury charges and merely limited the scope of the prosecution's summation. Thus, the trial court in no way misled defense counsel by its subsequent jury charges. Moreover, petitioner has failed to establish any prejudice as a result of the court's alleged error. Petitioner claims that the outcome of the trial would have been different absent the court's alleged error. Respondent's Ex. A at 61-62. However, petitioner has never argued that the jury charges ultimately given by the court were improper. In fact, the jury charges track the statutory language of first-degree burglary and criminal possession of a weapon in the second degree, and, thus, appear to be proper. See N.Y. Penal Law § 140.03(1); id. § 265.03. Also, given the overwhelming evidence of petitioner's intent to commit a crime in complainant's

16

home, it is doubtful that—absent the trial court's alleged error—defense counsel would have had convincing summation arguments regarding the intent elements of the burglary and gun counts. Thus, even assuming the trial court erred, such an error was harmless. Consequently, petitioner's claim of a violation of his right to an effective summation is meritless and habeas relief is not warranted.

D. *Ineffective Assistance of Trial Counsel*

A petitioner seeking to attack his conviction based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-89 (1984).

In analyzing a claim that counsel's performance fell short of constitutional standards, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689). As explained by the Supreme Court,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

466 U.S. at 690-91. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting

Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy. See Strickland, 466 U.S. at 689.

Petitioner argues that he was denied effective assistance of counsel on two bases. Specifically, he claims trial counsel was ineffective for (1) failing to secure the testimony of three eyewitnesses to the crime and (2) refusing to allow petitioner to testify on his own behalf. Petitioner presented both of these claim in his 440 motion. Respondent's Ex. H at 13. The 440 court considered these claims and denied them on the merits. Respondent's Ex. J at 2. Thus, the court is precluded from granting habeas relief on these claim unless the state court's decision was contrary to or an unreasonable application of Supreme Court precedent.

Petitioner's first claim is that counsel was ineffective for failing to secure the testimony of petitioner's wives and daughter, who were eyewitnesses to the crime. In his 404 motion, petitioner claimed that his trial counsel failed to investigate and interview his wives and daughter, who were present during the crime, and secure their testimony for trial. Respondent's Ex. H at 13. In his affirmation, trial counsel stated that he spoke to petitioner's wives and suggested that they select one wife to testify. Respondent's Ex. I, Davis Affirmation ¶ 5. He affirmed that he subsequently interviewed the wife who chose to testify and "advised Mr. Allen that [he] did not feel it would be in [Mr. Allen's] best interest to have her or any of the other wives ... testify at trial." Id. Trial counsel further stated that petitioner "deferred to [his] judgment and they did not testify." Id. The 404 court held that "counsel did, indeed, investigate and interview defendant's proposed witnesses ... and made a strategic decision, discussed with and concurred by defendant, not to present their testimony." Respondent's Ex. J at 2. Based on

18

his affirmation, it seems apparent that trial counsel made the strategic decision not to present the testimony of petitioner's wives and daughter only after a thorough investigation of those witnesses. Under Strickland, such a strategic choice is "virtually unchallengeable." 466 U.S. at 690.

Even if there is some question with regard to counsel's decision not to put petitioner's wives and daughter on the stand, petitioner has failed to satisfy the second prong of the Strickland inquiry. In his 404 motion, petitioner claimed that the testimony of his wives and daughter was necessary to establish that petitioner did not enter the complainant's home, thus negating a necessary element of the burglary charge. Respondent's Ex. H at 13. The 404 court concluded that the failure to secure the testimony from petitioner's wives and daughter was not prejudicial because trial counsel made a strategic decision to call complainant's father, who testified that petitioner never entered complainant's house. Respondent's Ex. J at 2. According to trial counsel, unlike petitioner's immediate family members, the complainant's father "would be perceived as unbiased and actually provide contradictory testimony to his daughter." Respondent's Ex. I, Davis Affirmation ¶ 6. Given that trial counsel made this decision based on the potential adverse effects of testimony from petitioner's wives or daughter, petitioner has failed to establish that he suffered any prejudice as a result of trial counsel's decision. Thus, applying AEDPA's deferential standard of review, the court concludes that habeas relief is not warranted on this claim.

Petitioner's second claim is that counsel was ineffective for refusing to permit petitioner to testify at trial on his own behalf. The Supreme Court has held that a defendant in a criminal case has the right to testify on his own behalf. Rock v. Arkansas, 483 U.S. 44, 49 (1987). That

right can only be waived by the defendant himself. <u>Brown v. Artuz</u>, 124 F.3d 73, 77 (2d Cir.1997). The burden of ensuring that the defendant is informed of his right to testify "is a component of the effective assistance of counsel" and thus must meet the two-prong <u>Strickland</u> test. <u>Id.</u> at 79. Based on petitioner's 404 motion and trial counsel's uncontested affirmation, there is no suggestion that trial counsel failed to inform petitioner of his right to testify. In fact, as the 404 court recognized, trial counsel stated that he discussed "all aspects of the case with Mr. Allen, including whether or not he should testify." Respondent's Ex. I, Davis Affirmation ¶ 4. Trial counsel acknowledged that petitioner wanted to testify, but counsel advised against it and petitioner eventually took that advice. <u>Id.</u> Consistent with the 404 court's holding, the record suggests that counsel's performance was objectively reasonably and petitioner made an informed decision not to testify. However, even if counsel had acted unreasonably by preventing petitioner from exercising his right to testify, petitioner has shown no prejudice resulting from his failure to testify. Petitioner has failed to indicate how his testimony would have changed the result of the trial. <u>See Brown</u>, 124 F.3d at 81. Given that petitioner cannot satisfy either the first or second prongs of <u>Strickland</u>, habeas relief is not warranted on this claim.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus.

No certificate of appealability is granted with respect to any of the petitioner's claims, since the

petitioner failed to make a substantial showing of any denial of his constitutional rights. The

petitioner has a right to seek a certificate of appealability from the United States Court of

Appeals for the Second Circuit. See 28 U.S.C. § 2253.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: October 11, 2005
      Brooklyn, New York